# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAMES C. CARR, JR.,

                                :

                Petitioner,                          Case No. 3:10-cv-245

                                :           District Judge Timothy S. Black[1]
        -vs-                                  Magistrate Judge Michael R. Merz

WARDEN, Southern Ohio
 Correctional Facility,

                                :

                Respondent.

---

## REPORT AND RECOMMENDATIONS

---

Petitioner James C. Carr, Jr., brought this habeas corpus action under 28 U.S.C. § 2254 to obtain relief from his conviction in the Montgomery County Common Pleas Court on charges of kidnaping, aggravated robbery, aggravated murder, attempted aggravated murder, and having weapons while under disability and from the resulting sentence of forty-eight years to life (Termination Entry, Ex. 61 to Return of Writ, PageID 580-582). Proceeding *pro se* in this Court, he pleads the following grounds for relief:

> **Ground One:** The Trial Court erred in sustaining the State's Request to take the Deposition of a material witness.

> **Ground Two:** The Trial court erred in granting the State's Motion to declare Matthew Fairman an unavailable witness and to allow use of Fairman's deposition transcript as former testimony.

---

[1]This case was transferred to Judge Black by Judge Rice on October 27, 2010 (Doc. No. 9).

**Ground Three:** The Trial Court erred in permitting the deposition of Matthew Fairman to be read to the jury rather than playing the videotape of the deposition.

**Ground Four:** The Trial Court erred in overruling Defendant's Motion to Suppress Identification Testimony.

**Ground Five:** The Trial Court Erred in Overruling Petitioner's Motion to Dismiss based on Speedy Trial Violation.

**Ground Six**: The Trial Court erred in overruling Defendant's Motion to Dismiss based on Destruction of Crime Scene Evidence.

**Ground Seven:** The Trial Court erred in overruling the Defendant's Motion for Grand Jury Testimony.

**Ground Eight:** The Trial Court erred in overruling Petitioner's Motion to Suppress Evidence taken from an illegal search of a vehicle.

**Ground Nine:** The Trial Court erred in allowing the Testimony of a Witness as to Statements Made to him by the Defendant regarding one of the victims in this case.

**Ground Ten:** The Trial Court erred in refusing to allow the Defendant to offer evidence that would have impeached the credibility of key state's witnesses.

**Ground Eleven**: The Indictment returned against the Defendant was defective in that it omitted a necessary element for the offense of aggravated robbery.

**Ground Twelve:** The Prosecutor made improper remarks during Closing Argument that prejudicially affected Petitioner's substantial rights of [sic] and amounted to Prosecutorial Misconduct.

**Ground Thirteen:** The Defendant was deprived a Fair Trial through his Counsel's Ineffective Assistance by failing to object to the Prosecutor's Improper Remarks during Closing Argument.

**Ground Fourteen:** The Trial Court erred in Overruling the Defendant's Motion for a New Trial.

**Ground Fifteen:** The Cumulative effect of the errors occurring at

-2-

trial deprived Defendant of a Fair Trial.

(Return of Writ, Doc. No. 8, PageID 234-236.)

## Procedural History

Carr was indicted in August, 2005.  After extensive pre-trial motion practice, the case was tried to a jury in January, 2008.  After a guilty verdict on all counts and denial of a motion for new trial, the case was appealed to the Second District Court of Appeals which affirmed the conviction and sentence.  *State v. Carr,* 2009 Ohio 1942, 2009 Ohio App. LEXIS 1673 (Ohio App. 2nd Dist. Apr. 17, 2009).  The Ohio Supreme Court declined to allow a discretionary appeal.  *State v. Carr*, 122 Ohio St. 3d 1523 (2009).  Carr filed for post-conviction relief under Ohio Revised Code § 2953.21, but the trial court denied relief.  He appealed that decision, but it was affirmed.  *State v. Carr*, 2010 Ohio 3422, 2010 Ohio App. LEXIS 2903 (Ohio App. 2nd Dist. July 23, 2010), and again the Ohio Supreme Court declined jurisdiction.  *State v. Carr*, 2010 Ohio 6008 (2010).  He then filed the instant Petition in this Court.

## Analysis

### Ground One

In his first Ground for Relief, Carr argues the Ohio trial court erred in allowing the State to take the pre-trial deposition of Matthew Fairman, one of the victims.  Respondent argues that this

claim is not cognizable under § 2254. Carr responds that allowing the deposition deprived him of due process.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*;Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62 (1991). This claim was presented to the state court of appeals solely as an error of state law, to wit, Ohio R. Crim. P. 15, and was decided on that basis. This Court cannot grant relief by deciding the Ohio courts were wrong in their interpretation of their own rules.

Mr. Carr, however, says he is not claiming the Ohio courts misinterpreted their own rules, but denied him due process by allowing the deposition at all. Because he never presented that claim to the Ohio courts, it is procedurally defaulted.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F. 3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who

-4-

fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

In other words, because Carr never claimed in the Ohio courts that allowing the deposition was a denial of due process, he cannot now bring that claim in federal court. His first Ground for Relief should therefore be dismissed with prejudice.

## Ground Two

In his second Ground for Relief, Carr contends the trial court erred in declaring Matthew Fairman was an unavailable witness and allowing his deposition testimony to be used at trial, which is claimed to have violated Carr's Confrontation Clause rights.

This claim was presented to the Ohio Court of Appeals. Judge Brogan's opinion for the Second District is as follows:

> [*P10] In his second assignment of error, Carr contends the trial court violated his Sixth Amendment confrontation rights under *Crawford v. Washington (*2004), 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177, when it declared Fairman an unavailable witness and allowed the State to use Fairman's deposition at trial.
>
> [*P11] Carr's primary argument is that he lacked a full opportunity to cross examine Fairman because counsel for co-defendant Jokova James also participated in the deposition. At that time, the cases against Carr and James had not been severed for separate trials. Therefore, the deposition proceeded with both defendants and their counsel present. Carr contends this scenario limited his ability to cross examine Fairman, thereby violating his confrontation rights. In support, he cites an affidavit from his trial counsel that was attached

-5-

to a memorandum in the proceedings below. Carr also argues that the deposition was taken only three months after his arraignment, giving his attorney too little time to investigate. Finally, Carr contends the deposition, as read to the jury, made no distinction between which defendant's attorney was asking questions on cross examination. He asserts that this resulted in substantial prejudice because "the defenses of the two defendants were at odds with each other and there was no way for the jury to know which attorney was asking the question."

[*P12]  Upon review, we find no violation of Carr's Sixth Amendment right to confront his accuser. In *Crawford*, the Supreme Court held that the Sixth Amendment Confrontation Clause bars the use of a testimonial statement made by a witness who does not appear at a criminal trial unless the witness is unavailable to testify at trial and was subject to cross-examination when the statement was made. In the present case, Fairman made testimonial statements during his [**8] deposition, he was unavailable to testify at trial because he was dead, and he was subject to cross examination during his deposition.

[*P13]  We find no merit in Carr's argument that taking Fairman's deposition with both defendants participating deprived his attorney of effective cross examination as required by *Crawford*. Carr contends his attorney would have conducted a "materially different cross examination" if the two cases had been severed prior to the deposition. The affidavit from his counsel, however, provides few specifics about how the cross examination would have been different if James' counsel had not participated in it. In relevant part, the affidavit states:

[*P14]  "8. Because the Motion to Sever had been overruled I conducted my cross examination according to the rules of evidence.

[*P15]  "9. Specifically, I did not ask any questions that would duplicate the questions asked by Jokova James' counsel.

[*P16]  "10. If the deposition had been severed I would have conducted a materially different cross examination." (Affidavit attached to Doc. # 300).

[*P17]  In paragraph eight, Carr's counsel states that he conducted his cross examination according to the rules of evidence. He presumably would have done the same even without the participation of James' counsel. In paragraph nine, Carr's counsel avers that he did not ask

-6-

questions that would duplicate what James' counsel already had asked. We note, however, that the trial court allowed the jury to hear the questions asked by James' counsel and Fairman's answers to those questions. We see no *Crawford* violation arising from the fact that another attorney asked the questions. Finally, in paragraph ten, Carr's counsel states that his cross examination would have been "materially different" if James' counsel had not participated. This averment is too conclusory to establish a *Crawford* violation.

[*P18]  Carr's argument about the deposition being taken three months after his arraignment has little to do with the Confrontation Clause. In any event, he cites nothing to suggest that his attorney was unprepared for the deposition. We note too that he could have requested additional time to prepare if necessary. Finally, we find no *Crawford* violation arising from the fact that the deposition, as read to the jury, made no distinction between which defendant's attorney was asking questions on cross examination. The identify of the questioner was not as important as the substance of his questions and Fairman's answers to them. On that issue, the trial court gave Carr a choice about how much of the entire cross examination would be admitted. It also edited the cross examination by James' counsel to help alleviate Carr's concerns about potential prejudice. (See, e.g., Trial transcript at 628, 870, 875). In short, Carr has failed to persuade us that the cross examination of Fairman violated *Crawford*. The second assignment of error is overruled.

*State v. Carr*, 2009 Ohio 1942, ¶¶ 10-19, 2009 Ohio App. LEXIS 1673 (Ohio App. 2nd Dist. Apr. 17, 2009).

When a state court has decided a federal constitutional issue later presented in habeas corpus, the federal court must defer to the state court ruling unless it is contrary to, or an objectively unreasonable application of, constitutional law clearly established in holdings of the United States Supreme Court.  28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 403-404 (2000)*; Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Brown v. Payton,* 544 U.S. 133, 134 (2005).

Respondent relies on the state court decision in the Return of Writ (Doc. No. 8, PageID 271-280) and Carr does not discuss Ground Two in his Reply, but makes relevant arguments under

Ground One as he had done in his Petition.

Much of Carr's argument focuses on the state court's having allowed Fairman's deposition in the first place; Carr argues there was insufficient evidence that he would likely be absent at trial. However, Carr cites absolutely no authority for the proposition that the United States Constitution controls how States gather evidence before a criminal trial. The Confrontation Clause pertains to whether evidence from an unavailable witness can be presented at trial. There is no doubt Matthew Fairman was unavailable for trial: he was found handcuffed and shot to death in a burning car.[2] As Judge Brogan found, Carr actually benefitted from having the deposition conducted by two attorneys, his and Jokova James'. Carr's claim that the deposition would have been done differently if severance had been granted before the deposition is beside the point: the Confrontation Clause guarantees cross-examination, not a perfect cross-examination.

The Second District's decision on this Confrontation Clause claim is neither contrary to nor an unreasonable application of *Crawford v. Washington, supra*. Ground Two should be dismissed with prejudice.

---

[2] In his usual understated style, Judge Brogan referred to the trial court's ruling that Fairman might become unavailable as "prescient." *State v. Carr, supra,* ¶ 9.

## Ground Three

In Ground Three Carr claims trial court error in allowing the Fairman deposition to be read to the jury, rather than showing the videotape record of the deposition.  Carr raised this point as his third assignment of error on direct appeal and the Court of Appeals held:

> [*P19]  In his third assignment of error, Carr contends the trial court erred in having Fairman's deposition read to the jury rather than having a videotape played. Carr argues that the trial court's choice deprived the jury of the ability to assess Fairman's credibility by considering his demeanor, gestures, and voice inflections. He further asserts that the trial court made little effort to determine the feasibility of playing an edited videotape.
>
> [*P20]  In response, the State maintains that Carr failed to raise the foregoing issue below. The State contends he challenged the procedure by which the deposition would be read, but not the decision to have it read. In any event, the State claims the quality of the videotape is not good enough to have assisted the jurors in assessing Fairman's credibility. In reply, Carr insists that he did object to having the deposition read in lieu of a videotape.
>
> [*P21] Upon review, we agree with the State that Carr objected only to the way the deposition would be read. In the January 7, 2008 written objection referenced in his brief, Carr objected to the trial court's decision to have the prosecutor and defense counsel read the direct and cross examination questions posed to Fairman. Carr also challenged the trial court's decision to allow a third-party to read Fairman's answers to the questions. Nowhere in those objections did Carr urge the trial court to play a videotape of the deposition. To the contrary, Carr argued that "the only way this testimony can be entered into trial with the minimum of bias is to simply have a court officer read the questions and answers from the transcript to the jury." (Doc. # 302 at 3). The following day, Carr's counsel reiterated his objection to the way the deposition transcript would be read. (Trial transcript at 632-633). During a discussion with counsel, the trial court advised that it would entertain a request for an edited videotape to be played for the jury. (Id. at 595-596). Carr's counsel declined to make such a request, stating that he would "do straight transcript[.]" (Id. at 625). Therefore, Carr has waived any objection to the trial

> court not playing a videotape, and he cannot claim error on appeal,
> even under Crim.R. 52(B). *State v. Payne*, 114 Ohio St.3d 502, 2007
> Ohio 4642, P23, 873 N.E.2d 306. The third assignment of error is
> overruled.

*State v. Carr, supra,* ¶¶ 19-21.

Respondent claims this Ground for Relief is procedurally defaulted in the same way as any

constitutional claim in Ground One, to wit, that it was never fairly presented to the state courts as

a constitutional claim (Return of Writ, Doc. No. 8, PageID 253-254.)

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must

be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy

the asserted constitutional violation, including presenting both the legal and factual basis of the

claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506 (6th

Cir. 1993); *Riggins v. McMackin*, 935 F.2d 790 (6th Cir. 1991). The claim must be fairly presented

at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does

not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir.

2006); *Franklin v. Rose,* 811 F.2d 322 at 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674,

681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of

the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450

F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). "A lawyer

need not develop a constitutional argument at length, but he must make one; the words 'due process'

are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the

state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir.

2006); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004).

A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both the factual and legal basis for his claim. *Hicks v. Straub*, 377 F.3d 538 (6th Cir. 2004), *citing McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276, 277-78 (1971).

> In determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, we consider whether: 1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) the petitioner relied upon federal cases employing the constitutional analysis in question; 3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or 4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks* at 552-53, *citing McMean*. An examination of Carr's argument to the Second District on this assignment of error and of Judge Brogan's opinion shows that Petitioner did not fairly present any federal constitutional claim on his third assignment of error.

As a second basis for procedural default, Respondent notes that Carr's counsel did not object to reading the transcript, but instead actively sought to have the transcript read instead of a showing of the videotape. (See record citations in *State v. Carr, supra*, ¶ 21.)

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a

habeas claim is precluded by procedural default. *Eley v. Bagley*, 604 F.3d 958, (6th Cir. 2010)

*Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138

(6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407

(2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138. The Court of Appeals found Carr had waived this claim by not objecting

at trial. *State v. Carr, supra*, ¶ 21. Without doubt, Ohio has a contemporaneous objection rule for

preserving claims for appeal and the Sixth Circuit has upheld that rule as an adequate and

independent state law ground for decision. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott*

*v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac*, 456 U.S. 107, 124-29 (1982). On this

basis also, Carr has procedurally defaulted on his third Ground for Relief.

-12-

Even if there were not procedural default, this claim is without merit: Carr has cited no United States Supreme Court holding to the effect that a state criminal defendant is entitled to insist that prior testimony be presented to a jury by videotape than by reading the transcript. This is hardly surprising, since the Confrontation Clause was adopted more than 150 years before videotape recording.

For all three of these reasons, Ground Three should be dismissed with prejudice.

## Ground Four

In Ground Four Carr argues the trial court erred in overruling his motion to suppress identification testimony. This question was raised as the fourth assignment of error on direct appeal. The Court of Appeals decided as follows:

> [*P22]  In his fourth assignment of error, Carr contends the trial court erred in overruling his motion to suppress identification testimony. This argument concerns Fairman's identification of Carr in a photo spread. Fairman made the identification while in the hospital days after being shot. During a February 9, 2006 hearing on Carr's motion to suppress the identification, a detective testified that Fairman had been alert and conscious when viewing the photo spread. After the trial court overruled the motion, Carr retained a nurse to review Fairman's medical records concerning his condition at the time of the identification. After that review, Carr moved to reopen his suppression motion. He claimed the nurse's testimony was necessary to assess Fairman's ability to "comprehend, understand, and verbalize his answers" when he made his identification. (Doc. # 224). The trial court overruled the motion.

> [*P23]  On appeal, Carr notes that a pretrial identification must be suppressed if the identification procedure was impermissibly suggestive and the identification itself was unreliable under the totality of the circumstances. *See, e.g., State v. Gooden,* Montgomery App. No. 19231, 2003 Ohio 905, P15. He contends the nurse's

-13-

testimony about his condition may cast doubt on the reliability of Fairman's identification. The State correctly points out, however, that where the identification procedure is not impermissibly suggestive, any question about reliability goes to the weight of the identification. Thus, a trial court considering a motion to suppress need not address suggestiveness if a defendant fails to show that the identification procedure itself was impermissibly suggestive. *State v. Harris*, Montgomery App. No. 19796, 2004 Ohio 3570, P19. Carr does not even argue on appeal that the identification procedure in his case was impermissibly suggestive. In any event, we find nothing impermissibly suggestive about the composition or presentation of the photo spread. Therefore, anything the nurse might have said about the reliability of Fairman's identification would go only to its weight, not its admissibility. The trial court did not err in refusing to reopen the suppression motion. The fourth assignment of error is overruled.

*State v. Carr, supra,* ¶¶ 22-23.

Here the Court of Appeals applied the appropriate federal constitutional standards, albeit as embedded in its own prior decisions. Thus Carr's burden is to show this decision is contrary to or an unreasonable application of Supreme Court precedent. This he has failed to do. As Judge Brogan notes, Carr failed to offer any evidence or make any argument on the threshold question of whether the method of pretrial identification was impermissibly suggestive. Furthermore, this is not a case of stranger crime: from the scene, Fairman called 911 and identified the perpetrators by nickname. *Id.* at ¶ 2. Ground Four should be dismissed with prejudice.

-14-

### Ground Five

In Ground Five Carr claims violation of his right to a speedy trial.  The Respondent asserts that any federal constitutional claim related to speedy trial (i.e., a defendant's right to speedy trial as guaranteed by the Sixth Amendment) was waived by failure to fairly present such a claim to the state courts.  Carr makes no direct response to that position, although he does cite several federal cases in his Petition.

The Court of Appeals wrote:

> [*P26]  Carr's entire argument on the speedy trial issue is as follows:
>
> [*P27]  "In the present action, the Defendant executed a time waiver on December 2, 2005 and later withdrew it on February 14, 2006. The Defendant was not brought to trial until January 14, 2008. Even allowing for tolling of the speedy trial clock during various pretrial motions, under no circumstances can it be said that the Defendant was brought to trial within the required statutory period, and the trial court erred when it failed to dismiss the case against the Defendant based on a violation of the Defendant's right to a speedy trial."

*State v. Carr, supra,* ¶¶ 26-27.  Presented with that argument, the Court of Appeals gave an extensive analysis of the speedy trial claim as made under Ohio Revised Code § 2945.71 *et seq*. There is no mention made of any federal constitutional decisions.

In his Petition Carr cites *United States v. Fazzini*, 871 F.2d 635 (7th Cir. 1989), and *Zedner v. United States*, 547 U.S. 489 (2006).  *Fazzini* does not involve speedy trial at all, but a ruling on the admissibility of mental health evidence; Zedner involves interpretation of the federal Speedy Trial Act and not the constitutional right to a speedy trial under the Sixth Amendment.

Because Petitioner did not present any federal constitutional speedy trial claim to the state courts, he has procedurally defaulted on that claim and it should be dismissed with prejudice.  Of

course, as noted above, this Court cannot re-examine the Ohio court's analysis of Ohio's speedy trial statute.

## Ground Six

In his sixth Ground for Relief, Carr claims the case should have been dismissed because of destruction of crime scene evidence.   Respondent concedes this claim was presented in constitutional terms to the state courts and is thus preserved for review.  In deciding this claim the Court of Appeals wrote:

> [*P34]  In his sixth assignment of error, Carr contends the trial court erred in overruling a motion to dismiss based on the destruction of crime-scene evidence. This argument concerns the State's failure to preserve Matthew Fairman's automobile. The record reflects that the vehicle was inspected by evidence technicians shortly after the July 2005 shooting and then towed to a car lot. Police removed a hold on the vehicle in September 2005.  It was sold for salvage in November 2005. No forensic evidence linking Carr to the shooting was recovered from the vehicle.

> [*P35]  Following a hearing on Carr's motion to dismiss, the trial court determined that the vehicle had no apparent materially exculpatory value. Assuming, *arguendo,* that the vehicle was potentially useful to Carr, the trial court concluded that it was not disposed of in bad faith. On appeal, Carr contends the trial court's holding "ignores the potential for finding evidence that would either exonerate [him] completely or point to an additional suspect not known to [him]."

> [*P36]  The Due Process Clause protects a criminal defendant from being convicted if the State has failed to preserve materially exculpatory evidence or in bad faith has destroyed potentially useful evidence. *State v. Bolden*, Montgomery App. No. 19943, 2004 Ohio 2315, P51; *State v. Franklin*, Montgomery App. No. 19041, 2002 Ohio 2370. In order to be materially exculpatory, "'evidence must both possess an exculpatory value that was apparent before the

evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id.* at P52, quoting *California v. Trombetta* (1984), 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L. Ed. 2d 413. When evidence is only potentially useful, its destruction does not violate due process unless police acted in bad faith. *Id.* "The term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" *Franklin, supra,* at P47, quoting *State v. Buhrman* (Sept. 12, 1997), Greene App. No. 96 CA 145, 1997 Ohio App. LEXIS 4093, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 187 N.E.2d 45, paragraph two of the syllabus, overruled on other grounds, *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 554, 1994 Ohio 461, 644 N.E.2d 397.

[*P37]  Upon review, we find no error in the trial court's ruling. In overruling Carr's motion, the trial court reasoned:

> [*P38]  "* * * The Court finds that when the Crown Victoria was released and sold it had no apparent materially exculpatory value. Defendants have been provided the photographs of the vehicle and all other discovery relating to said vehicle. Even if the Crown Victoria was potentially useful evidence, there  was no bad faith on the part of the police or the State in the release and sale of the vehicle. The tests on the vehicle and collection of evidence had been completed by the State and storage fees were accruing. Matthew Fairman, the owner of the vehicle, chose not to re-claim the vehicle and the vehicle was sold at auction. Defendants had not requested inspection of the vehicle and the State had no further reason to hold said vehicle. Further, there was testimony that the Crown Victoria has been located despite it being sold." (Doc. # 227 at 6).

[*P39]  Carr contends the trial court's ruling "ignores the potential for finding evidence[.]" But this argument reinforces the trial court's finding that the vehicle was at most "potentially useful." Therefore, the failure to preserve it did not violate due process in the absence of bad faith, which Carr has not even alleged. Accordingly, the trial court properly overruled his motion. The sixth assignment of error is

overruled.

*State v. Carr, supra*, ¶¶ 34-40.

The question before this Court on the sixth Ground for Relief is whether the Court of Appeals decision is contrary to or any unreasonable application of the relevant Supreme Court precedent, *California v. Trombetta,* 467 U.S. 479 (1984), and *Arizona v. Youngblood,* 488 U.S. 51 (1988). Carr has failed to make that demonstration. He does not point to any exculpatory evidence which was destroyed. In fact, the exculpatory evidence had already been gleaned from the car, to wit, that there was no forensic evidence in the car which linked him to the shootings. The state courts' findings of no materially exculpatory evidence and lack of bad faith are factual findings to which this Court must defer in the absence of clearly convincing evidence to the contrary and Carr has offered only speculation, not evidence.

Ground Six should be dismissed with prejudice.

## Ground Seven

In his seventh Ground for Relief, Carr claims the trial court erred in failing to release grand jury testimony to him. He raised this claim as his seventh assignment of error on direct appeal and the Court of Appeals decided as follows:

> [*P40] In his seventh assignment of error, Carr claims the trial court erred in overruling his motion for Matthew Fairman's grand jury testimony. When Carr filed the motion in June 2006, Fairman still was alive. In support of his motion, Carr claimed there were unspecified inconsistencies in Fairman's statements to police and his later videotaped deposition. Carr opined that "[a] review of the grand jury testimony may show additional inconsistencies and/or contradictions in testimony." Carr unsuccessfully renewed his motion

and made the same argument after Fairman's death.

[*P41] Upon review, we find no error in the trial court's refusal to release Fairman's grand jury testimony. "'Crim.R. 6(E) controls the disclosure of grand jury testimony.'" *State v. Jackson* (March 5, 1999), Montgomery App. No. 17226, 1999 Ohio App. LEXIS 847, quoting *State v. Mack*, 73 Ohio St.3d 502, 508, 1995 Ohio 273, 653 N.E.2d 329. To inspect grand jury transcripts, a defendant must establish a particularized need that outweighs the need for secrecy. *Id.* A particularized need exists when there is a probability that non-disclosure will deny the defendant a fair trial. *Id.* "'[A] bald assertion on appeal that [the defendant] needed to examine the testimony of an adverse witness for inconsistencies fails to set forth a particularized need.'" *Id.*, *quoting Mack, supra,* at 508. A trial court does not abuse its discretion by finding no particularized need when a defendant speculates that grand jury testimony might have revealed contradictions. *Id.* "'If the use of grand jury testimony were permitted simply because a defendant claims that the prior statements of a witness could be used for impeachment purposes, virtually all grand jury testimony would be subject to disclosure.'" *Id., quoting State v. Cherry* (1995), 107 Ohio App.3d 476, 479, 669 N.E.2d 45.

[*P42] In both of his motions, Carr merely speculated that Fairman's grand jury testimony might contradict statements he gave to police or his videotaped deposition. Therefore, the trial court did not abuse its discretion in finding no particularized need for the testimony. Carr's citation to Evid.R. 804(B)(1) on appeal does not alter our conclusion. Carr reasons that the grand jury testimony would have been admissible at trial under the former-testimony hearsay exception. Regardless of whether the testimony would have survived a hearsay objection, the fact remains that Carr failed to show a particularized need for it under Crim.R. 6(E). Therefore, the trial court did not err in denying his motion to obtain the testimony. The seventh assignment of error is overruled.

*State v. Carr, supra*, ¶¶ 40-42.

Respondent questions what federal constitutional right Carr is relying on here and Carr responds that he is relying on his Confrontation Clause and Fair Trial rights (Reply, Doc. No. 20, p. 12). He presents no federal constitutional authority for the proposition that either the Fifth or Sixth Amendment provides a blanket right to grand jury testimony of a witness later presented at

trial.  As the Return of Writ shows, both Ohio and federal courts generally protect the secrecy of grand jury proceedings and release testimony given to the grand jury in the absence of a showing of particularized need.

In part Carr seems to claim Fairman's grand jury testimony would have been exculpatory, but then notes the absence of any indicia of reliability (Petition, Doc. No. 2, p. 41.)  The absence of such indicia would have gone to prevent the State's introducing the grand jury testimony at trial, rather than supporting admission if offered by Carr.

Carr claims he has shown a particularized need for Fairman's grand jury testimony because "the Prosecutor, State's Investigator and Detective all agreed and mentioned to Petitioner's Co-Defendant's attorney that they believed Matthew Fairman to had [sic] made false statements in Deposition Statements."  *Id.* at 40.  This assertion is not supported by any record reference, either in this Court or in Carr's Brief on Appeal (Ex. to Return of Writ, PageID 612).

The general possibility that a witness' grand jury testimony may be to some extent inconsistent with that witness' later trial or deposition testimony is not sufficient to show a particularized need because such a possibility is present in every criminal case.

Ground Seven for Relief should be dismissed with prejudice.

-20-

## Ground Eight

In his eighth Ground for Relief, Carr contends evidence was unconstitutionally taken from a vehicle and used against him. Because this claim arises under the Fourth Amendment, Respondent contends this Court cannot reach the merits, relying on *Stone v. Powell,* 428 U.S. 465 (1976).

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

-21-

In his Reply, Petitioner argues that the "Ohio Courts did not function properly in his case," but does not explain what he means by that beyond a claim, apparently under the Confrontation Clause, that he did not get an opportunity to "cross-examine" the physical evidence seized from the vehicle.

In neither his Petition nor his Reply does Carr explain how the Ohio system for deciding Fourth Amendment claims frustrated his presentation of his claim in this case.  As the Sixth Circuit noted in *Riley*, the Ohio process, which is parallel to the federal process, allows a motion to suppress in the trial court and then appeal from that decision to the Court of Appeals.  Carr did both.  He was given a hearing in the trial court in December 2006 and he was fully able to present this claim on appeal.  The Court of Appeals rejected the Fourth Amendment claim he had actually made in the trial court (complaining of a search on October 7, 2005) on the same basis as the trial court, to wit, Carr's lack of standing to object to a search of a vehicle owned by his former girlfriend to which he did not have access and therefore lacked any expectation of privacy in October, 2005.  *State v. Carr, supra*, ¶ 44.  On appeal Carr complained of a different search of the same vehicle in August, 2005, but the Court of Appeals held that claim was waived by failure to raise it in the trial court.  *Id.* ¶ 46.

Carr has made no showing to overcome the bar of *Stone v. Powell, supra.*  In addition, his arguments do not show the Court of Appeals decision on this assignment of error is contrary to or an unreasonable application of Supreme Court precedent.  Finally, any claim that the release of the vehicle before he had an opportunity to "cross-examine" it – assuming that states a claim under the Confrontation or Due Process Clause – if procedurally defaulted by his failure to raise the claim in the state courts.  The eighth Ground for Relief should be dismissed with prejudice.

## Ground Nine

In Ground Nine Carr claims the trial court erred by admitting in evidence statements assertedly made by Carr to the witness, Kurtis Wallace.  Carr presented this claim as his ninth assignment of error on direct appeal.  The Court of Appeals ruled as follows:

> [*P47]  In his ninth assignment of error, Carr contends the trial court erred in allowing the State to introduce inadmissible  other-acts evidence. This argument concerns testimony elicited from Kurtis Wallace about a December 2006 conversation he and Carr had in the Montgomery County jail concerning Carr's case.

> [*P48] On direct examination, Wallace testified that he told Carr the police would locate Fairman and compel him to testify for the State. According to Wallace, Carr responded: "[I]t won't happen because we already took care of that." Carr then explained "that the guy had been shot in [a] car and burnt." (Trial transcript at 1099- 1101). Carr unsuccessfully objected to this testimony on Evid.R. 404(B) and 403(A) grounds. The trial court also rejected an argument that the testimony should be excluded because the State had failed to provide the defense with these statements Carr allegedly had made in jail.

> [*P49]  On appeal, Carr argues that Wallace's testimony was inadmissible under Evid.R. 404(B) and R.C. 2945.59. These provisions prohibit evidence of other acts of a person when offered to prove his character to show that he acted in conformity therewith. Such evidence may be offered, however, to show other things, some of which are identified in Evid.R. 404(B) and R.C. 2945.59. *State v. Smith* (1992), 84 Ohio App.3d 647, 664, 617 N.E.2d 1160.  The trial court found that Carr's statements to Wallace were admissible to show consciousness of guilt. A number of courts have recognized that evidence reflecting consciousness of guilt is admissible as an admission by conduct. Indeed, "many acts of the defendant after the crime seeking to escape the toils of the law are uncritically received as admissions by conduct constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself." *State v. Behun* (Sept. 20, 1985), Portage App. No. 1490, 1985 Ohio App. LEXIS 7107, citing McCormick, Evidence (2d Ed. Cleary Ed.1972) 655, Section 271; see, also, *State v. McLeod*, Jefferson App. No. 05 JE 15, 2006 Ohio 7076, P30; *State v. Farley* (Nov. 2, 1998),

Clermont App. No. CA98-01-004, 1998 Ohio App. LEXIS 5156; *State v. Soke* (1995), 105 Ohio App.3d 226, 250, 663 N.E.2d 986; *State v. Leonard* (May 21, 1993), Lawrence App. No. CA92-12, 1993 Ohio App. LEXIS 2725. We agree with the trial court that Carr's statements about Fairman were admissible because they showed consciousness of guilt.

 [*P50]  We also reject Carr's contention that the statements were inadmissible under Evid.R. 403(A). The trial court did not abuse its discretion by failing to find that the probative value of the statements was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Although Carr was not on trial for killing Fairman, his statements to Wallace were highly probative of his guilt on the charges for which he was being tried. The statements implied that he had played some role in Fairman's execution in order to prevent Fairman from testifying. As noted above, this is an admission of guilt by conduct.

 [*P51]  Finally, in a one-sentence argument, Carr asserts "that the State failed to fully disclose the contends [sic] of this alleged admission by the Defendant even though the State issued a report from the detective where Mr. Wallace allegedly advised the detective of the admission." Upon review, we find this argument to be unpersuasive. Carr has failed to identify a particular report or cite anything in the record to support his argument. See App.R. 12(A)(2). Based on our own review of the record, the statements at issue do not appear to have been contained in any police report. According to the State, Wallace did not tell police about the statements Carr made to him in the Montgomery County jail. (Trial transcript at 1066-1067). Instead, Wallace told the prosecutor about Carr's jailhouse statements in the course of a pretrial interview. (Id.). Carr cites nothing obligating the State to disclose the substance of the prosecutor's interview with Wallace. Under Crim.R. 16(B)(1)(e), the State only was required to provide the defense with the names and addresses of its witnesses. Having been given that information, defense counsel could have attempted to interview Wallace himself. The ninth assignment of error is overruled.

*State v. Carr, supra*, ¶¶ 47-51.

In the Court of Appeals and in his Petition, Carr argues this Ground for Relief solely as a matter of state law, to wit, Ohio R. Evid. 403 and 404 and Ohio R. Crim P. 16. Petitioner makes no

-24-

comment in his Reply (See Doc. No. 20, p. 7). The Court of Appeals also decided the assignment as a matter of state law. To the extent this issue was presented solely as a matter of state law, it was not fairly presented as a constitutional issue to the state courts and thus is procedurally defaulted.

If this Court were to reach the merits of this claim construed as a federal constitutional claim, however, it would still conclude this Ground for Relief should be dismissed. There is no blanket constitutional prohibition on the admission of other acts evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003). Here the state courts relied on a theory that Carr's statements to Wallace evinced a consciousness of guilt and that certainly is the purport of the statements. Carr offers no Supreme Court authority forbidding the admission of other acts evidence for that purpose. Ground Nine should be dismissed with prejudice.

## Ground Ten

In his tenth Ground for Relief, Carr claims error in the trial court's refusal to permit him to introduce evidence which he says would have impeached the credibility of a key State's witness, Kurt Wallace. The evidence in question is a number of Montgomery County Jail records which Carr claims would have shown he and Wallace could not have been together in the Jail at the time Wallace says the incriminating conversation – the one discussed in Ground Eight above -- occurred. In the Petition, Carr argues this was an abuse of discretion and that it somehow violated both his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and under the Confrontation Clause.

Respondent argues that this claim was presented solely as a state law claim to the Ohio courts, a claim that the trial judge abused his discretion in refusing to admit the documents. This

claim was indeed argued as the Tenth Assignment of Error on direct appeal and Carr's Brief is written entirely in terms of abuse of discretion (Appellant's Brief, Ex. to Return of Writ, Doc. No. 8, PageID 616).  There is no mention of any clause of the United States Constitution or any federal case law interpreting it.  The Court of Appeals certainly understood it was dealing with a state law question and noted it was reviewing the trial judge's decision for abuse of discretion.  *State v. Carr, supra,* ¶ 53.

In his Reply, Carr claims he certainly intended to raise federal constitutional claims.  At least the Court believes that is what he means when he states:

> Although Petitioner uses references of collaterally itemization which support his Constitutional premise, he does not in anyway constrain his holdings other than the tantamount cause of his grievance.  To simply assert a citation reference implicit of "Abuse of Discretion" in no wise diminish the totality of the United States Constitutional Sixth Amendment Right to Confront Witnesses.  A composite analysis will affirm Petitioner links the Constitutionality of even Due Process and that of a fair trial in his circumference argument on Direct Appeal.

(Reply, Doc. No. 20, p. 13.)  However, Petitioner's assertion does not make it so.  There are simply no references to the United States Constitution in the argument on the Tenth Assignment of Error. Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).  In this appellate argument, the lawyer did not even use the words "due process" or "fair trial."  The Court concludes this federal constitutional claim was not fairly presented to the state courts and therefore is procedurally defaulted.

But even if the claim were not defaulted, it would be without merit. First of all, Petitioner patently has no *Brady* claim respecting documents he had in his hands and offered in evidence. *Brady* controls the obligation of the State to disclose evidence, not eventual admission of that evidence at trial.

Secondly, there is no valid Confrontation Clause claim here. Carr argues as if what his attorney wanted to do was cross-examine Kurt Wallace with these records, but the opinion of the Court of Appeals shows otherwise. After Wallace testified and left the witness stand, "[d]efense counsel later attempted to call a rebuttal witness from the Montgomery County Jail to authenticate and testify about screen-shots of jail visitation logs." *State v. Carr, supra,* ¶ 57. Carr cites no Supreme Court authority for the proposition that the Confrontation Clause right extends to requiring admission of rebuttal testimony.

Finally, the Court of Appeals examined the excluded records and concluded:

> [*P62] The records, which were identified below as exhibits I and J, reflect that Wallace and Carr both had visits near the same time on December 30, 2006. Carr had a personal visit from Carolyn Lomax. It ended at 14:47 hours. The badge number of the officer handling the visit was 949. On the same day, Wallace was scheduled for a personal visit from his wife, Paula. According to the records, however, Wallace actually received a professional visit instead. This is consistent with Wallace's claim that, on the day he met Carr, a professional visit from his attorney superceded a scheduled personal visit. The jail records further establish that Wallace's professional [**33] visit ended at 14:42 hours. Once again, the badge number of the officer handling the visit was 949. Therefore, the records Carr sought to introduce demonstrate that he and Wallace both had visits on December 30, 2006 that ended within five minutes of each other and were handled by the same officer. In light of these facts, it is entirely possible that the officer temporarily placed Wallace and Carr in the same interview room. We certainly find nothing in the records to support Carr's claim that they disprove such a possibility. Accordingly, we see no abuse of discretion in the trial court's exclusion of the records. Because they do not rebut Wallace's

> testimony or support the proposition asserted in Carr's proffer, the
> records were subject to exclusion under Evid.R. 403(A).

*State v. Carr, supra,* ¶ 62.  In sum, the court of appeals upheld the trial court's conclusion that these records did not prove what they were offered to prove and were thus not relevant.  Nothing in the United States Constitution prevents state courts from making that kind of determination and excluding evidence on that basis.  The tenth Ground for Relief should be dismissed with prejudice.

### Ground Eleven

In Ground Eleven, Carr avers that the indictment in this case omitted a necessary element for the offense of aggravated robbery.  In particular, he claims the aggravated robbery count did not include "the required mens rea and actus reus essentials with respect to the 'theft' element." (Petition, Doc. No. 2, p. 53.)

Respondent asserts that this Ground for Relief is not cognizable in federal habeas corpus because it raises only an error of state law.  The Warden notes that the claim tracks *State v. Colon*, 118 Ohio St. 3d 26, 885 N.E. 2d 917 (2008), but that *Colon* was first held to apply only prospectively (*State v. Colon*, 119 Ohio St. 3d 204 (2008)) and then overruled altogether.  *State v. Horner*, 126 Ohio St. 3d 466, 473 (2010).  Respondent further notes that this issue was not fairly presented as a federal constitutional claim on direct appeal and argues it is therefore procedurally defaulted.

In his Reply, Carr relies on very old case law regarding the elements which must appear in a federal indictment.  He does not discuss the nature of the argument made in the Ohio Court of Appeals.

This issue was presented as the eleventh Assignment of Error on appeal.  Deciding it, Judge

Brogan wrote:

> [*P65]   In his eleventh assignment of error, Carr claims his indictment was defective in that it omitted a necessary mens rea element for the offense of aggravated robbery. Although he did not raise this issue below, Carr cites *State v. Colon*, 118 Ohio St.3d 26, 2008 Ohio 1624, 885 N.E.2d 917, for the proposition that it may be raised for the first time on appeal.

> [*P66]  Upon review, we find no merit in Carr's argument. While we do not dispute his reading of Colon, we find no violation of the rule articulated in that case. Even setting aside the Ohio Supreme Court's recent emphasis that the syllabus of Colon is limited to its facts, (See *State v. Colon*, 119 Ohio St.3d 204, 2008 Ohio 3749, 893 N.E.2d 169)

> [*P67]  Carr's indictment simply did not violate the rule articulated in Colon by failing to charge a mens rea element. In *Colon*, the Ohio Supreme Court considered an indictment for the crime of robbery in violation of R.C. 2911.02(A)(2), which prohibits inflicting, attempting to inflict, or threatening to inflict physical harm while attempting, committing, or fleeing from a theft offense. The *Colon* court found the robbery indictment defective because a violation of R.C. 2911.02(A)(2) is not a strict liability offense, and the indictment failed to allege a mental state of recklessness.

> [*P68]   In the present case, Carr was charged with aggravated robbery in violation of R.C. 2911.01(A)(1), which generally prohibits displaying or using a deadly weapon during the commission of a theft offense or in fleeing from such an offense. We have held that *Colon* does not apply to an indictment charging the deadly-weapon form of aggravated robbery in violation of R.C. 2911.01(A)(1). *State v. Smith*, Montgomery App. Nos. 21463 and 22334, 2008 Ohio 6330, P72-73 (citing with approval cases from other appellate districts for the same proposition); *State v. Johnson,* Montgomery App. No. 22656, 2009 Ohio 1288, P53. Based on *Smith* and *Johnson*, we conclude that Carr's aggravated robbery indictment did not violate Colon. The eleventh assignment of error is overruled.

*State v. Carr*, *supra*, ¶¶ 65-68.  It had been held in *State v. Smith,* 2008 Ohio 6330, 2008 Ohio App.

LEXIS 5292 (Ohio App. 2nd Dist. Dec. 5, 2008),  that aggravated robbery was a strict liability crime.

*Id.*  at ¶ 72, *citing State v. Wharf,* 86 Ohio St. 3d 375, 715 N.E. 2d 172 (1999).  *State v. Johnson*,

2009 Ohio 1288, 2009 Ohio App. LEXIS 1087 (Ohio App. 2nd Dist. Mar. 20, 2009) is to the same

effect.  States are free under the federal Constitution to define the elements of crimes so long as,

once defined, the elements are proven beyond a reasonable doubt at trial.  *In re Winship*, 397 U.S.

358  (1970); *Jackson v. Virginia*, 443 U.S. 307 (1979).  The State of Ohio, through the Ohio

Supreme Court, has determined that strict liability is the prescribed mens rea element for aggravated

robbery.  Ground Eleven is procedurally defaulted and without merit; it should be dismissed with

prejudice.

### Grounds Twelve and Thirteen

In his twelfth Ground for Relief, Carr asserts his right to a fair trial was violated by

prosecutorial misconduct in closing argument.  In his thirteenth Ground for Relief, he asserts

ineffective assistance of trial counsel because his trial attorney did not object to the offending

remarks.

Although the caption of the twelfth ground refers to prosecutorial comments in closing

argument, the body of Carr's Memorandum in Support refers to comments made in opening

statement.  These were the comments complained of on direct appeal and the Court construes the

Petition as complaining about the same remarks.  *See Haines v. Kerner*, 404 U.S. 519 (1972).

The Court of Appeals ruling on these two assignments of error is as follows:

> [*P69]In his twelfth assignment of error, Carr contends prosecutorial
> misconduct deprived him of a fair trial. In particular, he challenges

-30-

two remarks by the prosecutor, one during opening statements and one during closing arguments.

[*P70]  In his opening statement, the prosecutor told the jury: "Now, I believe I told you in jury selection that Matthew Fairman is not going to walk through those double doors. He's not going to be able to walk into this courtroom and testify. The reason is that he's now deceased. And you'll hear more about that from another witness." (Trial transcript at 892). In his closing argument, the prosecutor remarked: "* * * [Y]ou will only hear from Matthew Fairman from the grave because Matthew is now dead, and we now know why." (Id. at 1753). Carr did not object to either of the foregoing statements. Therefore, we are limited to a plain-error review. "An error qualifies as 'plain error' only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise." *State v. Chapple*, 175 Ohio App.3d 658, 662, 2008 Ohio 1157, 888 N.E.2d 1121.

[*P71]  Neither of the challenged statements constituted misconduct at all, much less plain error. The first comment was entirely factual and accurate. Fairman was not going to walk into the courtroom and testify because he was dead. The prosecutor was entitled to inform the jury of that fact. Moreover, the jury later did hear more about Fairman's death from another witness, Kurtis Wallace. We see nothing objectionable about the prosecutor's opening statement. We reach the same conclusion about the second remark. Once again, the prosecutor pointed out that the jury could not hear live testimony from Fairman because he was dead. The prosecutor's final comment, "now we know why," was a permissible comment on the evidence. It pertained to Carr's jailhouse admission to Wallace about taking care of Fairman, who had been killed and left in a burned out car. The twelfth assignment of error is overruled.

[*P72]  In his thirteenth assignment of error, Carr contends he received constitutionally ineffective assistance of trial counsel. His argument concerns defense counsel's failure to object to the above remarks by the prosecutor during opening statements and closing arguments. As explained in our analysis of Carr's twelfth assignment of error, however, the remarks at issue were not objectionable. Therefore, defense counsel did not provide ineffective assistance by failing to object to them. The thirteenth assignment of error is overruled.

*State v. Carr, supra*, ¶¶ 69-72.

The purpose of the opening statement at trial is to summarize for the jury the evidence it will hear. As the Court of Appeals held, that is what the two objected-to comments did. Carr certainly has no complaint that the prosecutor adverted to evidence which was later excluded.

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168 (1986); *Bates v. Bell*, 402 F.3d 635, 640-41 (6th Cir. 2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); *accord Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom, Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). A four-factor test is then applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)(*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56 (quoting *Angel*, 682 F.2d at 608).  The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 572 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988).  Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), *citing Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

Although Judge Brogan did not explicitly engage in this line of analysis, he quite properly cut it short by deciding there was no prosecutorial misconduct.  That is, the remarks accurately summarized evidence the jury was permitted to hear.  Mr. Carr's real complaint is about the admission of the other acts evidence, which has been dealt with above.

As to the thirteenth Ground for Relief, as the Court of Appeals held in summary fashion, there was no defective performance on trial counsel's part because there was no prosecutorial conduct to which a proper objection could have been made.

The Court of Appeals decision is neither contrary to nor an unreasonable application of the controlling Supreme Court precedent,  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); and *Strickland v. Washington,* 466 U.S. 668 (1984). Grounds Twelve and Thirteen should be dismissed with prejudice.

## Ground Fourteen

In his fourteenth Ground for Relief, Carr argues the trial court erred in overruling his motion for a new trial.  As grounds for a new trial in the state trial court, Petitioner argued "his due process rights were violated by (1) the use of Fairman's deposition testimony at trial, (2) Kurtis Wallace's testimony about Carr's jailhouse statements, and (3) the exclusion of rebuttal evidence challenging Wallace's testimony."  *State v. Carr, supra*, ¶ 73. The Court of Appeals rejected this claim summarily because it had rejected the underlying claims on the merits.  *Id.*  Petitioner's argument on Ground Fourteen adds nothing to the arguments he made here on the underlying claims; because they were found to be without merit, his Ground Fourteen is also without merit, even assuming he properly preserved it for merit review by making federal constitutional claims in the state courts.

## Ground Fifteen

In his fifteenth Ground for Relief, Carr asserts that the cumulative errors which occurred at his trial deprived him of a fair trial.

Respondent argues that the United States Supreme Court has never applied cumulative error analysis to a non-capital case.  (Return of Writ, Doc. No. 8, PageID 246, *citing Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006).)  Petitioner relies on *Kyles v. Whitley*, 514 U.S. 419 (1995), but that is not a cumulative error case.  Rather, *Kyles* reinforced the doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963), by holding that a court must weigh the cumulative effect of all withheld evidence which qualifies under *Brady*, and not just consider that evidence piece-by-piece.

In any event, even if cumulative error were a cognizable habeas claim, the Court of Appeals in deciding this assignment of error found that there were not multiple errors.  *State v. Carr, supra,*

¶ 74.  This Court has also not found any multiple errors and the fifteenth Ground for Relief should therefore be dismissed with prejudice.


## Conclusion


In accordance with the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

May 23, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).